STATE OF NORTH CAROLINA v. RICHARD CHERY

No. COA09-515

(Filed 6 April 2010)

**Appeal and Error—motion to withdraw plea—failure to show fair and just reason**

The trial court did not err in a robbery case by denying defendant's motion to withdraw his no contest/*Alford* plea. Defendant failed to show that a fair and just reason existed for the withdrawal of his plea even though his co-defendant was found not guilty of all charges. Defendant voluntarily and knowingly entered into the plea agreement, and he failed to show he lacked competent counsel at any stage of the proceedings.

Appeal by defendant from judgment and order entered 3 and 15 October 2008 by Judge Jack W. Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 14 October 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Mabel Y. Bullock, for the State.*

*Mary McCullers Reece, for defendant-appellant.*

STEELMAN, Judge.

Where defendant has failed to show that any of the factors he asserted under *Handy* support his contention that a fair and just reason existed for the withdrawal of his plea, and our independent review of the record in this case reveals that the reason for defendant's motion was that his co-defendant was found not guilty of all charges, the trial court did not err by denying defendant's motion to withdraw his plea.

I. Factual and Procedural Background

Richard Chery (defendant) was a Marine stationed at Camp Lejune. At approximately 9:00 p.m. on 22 June 2007, defendant met his girlfriend Sabrina Ezzell (Ezzell), and his friends Consalvy Jean (Jean), Bryan Weixler (Weixler), and Mohammed Zghari (Zghari) to go to several night clubs. Defendant, Ezzell, and Jean rode in defendant's vehicle (Lexus), while Zghari and Weixler rode in Zghari's vehicle (Sebring).

While defendant drove down Highway 17, he merged into a lane and cut in front of another vehicle. The vehicle had to brake sud-

denly to avoid a collision and followed defendant to a Circle K gas station. Defendant and Zghari decided to follow the other vehicle after it left the Circle K. Jean was talking on the telephone to either Weixler or Zghari, and plans were made to rob the occupants of the other vehicle.

Defendant pulled along side the other vehicle, while the Sebring was directly behind it. Defendant then positioned the Lexus in front of the other vehicle. The driver of the other vehicle attempted to drive around the Lexus, but struck its rear bumper. All three vehicles stopped. Someone yelled, "My cousin got shot. My cousin got shot." Defendant did not hear any gunshots and was unsure who the shooter had been, but believed it was Weixler. Jean told defendant not to call the police. Both defendant and Zghari, and their passengers subsequently left the scene.

Defendant was charged with attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and accessory after the fact to attempted first degree murder. Jean and Weixler were also arrested and charged with various crimes.[1] Weixler was charged with attempted first degree murder. Both Jean and defendant entered into plea agreements with the State, under the terms of which they were to testify truthfully at Weixler's trial. Defendant's "Transcript of Plea," dated and signed on 27 May 2008, stated that he was pleading guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162 (1970), to the charge of conspiracy to commit robbery with a dangerous weapon in exchange for an active sentence of 15 to 27 months with credit for time already served. The remainder of the charges were to be dismissed by the State. On 8 September 2008, the trial court accepted defendant's plea.[2] Judgment was continued until after Weixler's trial. Jean and defendant subsequently testified at Weixler's trial. The jury found Weixler not guilty of all charges.

Defendant sent a handwritten letter to Judge Jenkins dated 17 September 2008, which stated that he wanted to withdraw his plea based upon: (1) the fact that Weixler was found not guilty of all charges; (2) no robbery had ever occurred; (3) he was told that he would spend fourteen years in jail if he did not enter a plea; (4) he had

---

1. The record does not contain the warrants or indictments pertaining to Jean or Weixler, nor do the briefs set forth all of their charges. Zghari and Ezzell were not charged with any crimes.

2. As discussed below in Section II.B.1, it is not entirely clear whether defendant entered an *Alford* plea or a no contest plea.

already spent fifteen months in jail; and (5) the statement from the alleged victim eliminated him as a robbery suspect. On 3 October 2008, defendant's counsel filed a written motion to withdraw defendant's plea on the basis of legal innocence, lack of competent counsel at all relevant times[3], confusion, and coercion On 3 October 2008, the trial court held a hearing on defendant's motion. The motion was denied and the trial court entered judgment imposing an active sentence of 15 to 27 months with credit for time served of 469 days. Defendant appeals.

## II.  Motion to Withdraw Plea

In his only argument, defendant contends that the trial court erred by denying his motion to withdraw his plea on the basis that defendant showed fair and just reasons for its withdrawal. We disagree.

### A.  Standard of Review

Our standard of review is well-established:

> In reviewing a trial court's denial of a defendant's motion to withdraw a guilty plea made before sentencing, "the appellate court does not apply an abuse of discretion standard, but instead makes an 'independent review of the record.'" *State v. Marshburn*, 109 N.C. App. 105, 108, 425 S.E.2d 715, 718 (1993) (citation omitted). There is no absolute right to withdraw a plea of guilty, however, a criminal defendant seeking to withdraw such a plea before sentencing is "generally accorded that right if he can show any fair and just reason." [*State v. Handy*, 326 N.C. 532, 536, 391 S.E.2d 159, 161 (1990)] (citation omitted). The defendant has the burden of showing his motion to withdraw his guilty plea is supported by some "fair and just reason." *State v. Meyer*, 330 N.C. 738, 743, 412 S.E.2d 339, 342 (1992).

*State v. Robinson*, 177 N.C. App. 225, 229, 628 S.E.2d 252, 254-55 (2006). If the defendant meets his burden of showing his motion to withdraw his plea is supported by some fair and just reason, "the State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." *Meyer*, 330 N.C. at 743, 412 S.E.2d at 342 (quotation omitted).

---

3. The record indicates that defendant initially retained counsel to represent him in these matters. (**R 15**). Defendant alleged that he was informed by this counsel that if he did not enter a plea he would go to jail for fourteen years. Thereafter, his first counsel withdrew and he was appointed counsel. Defendant's claim of lack of competent counsel was based solely on his first counsel's representation of the possible sentences for the crimes charged.

## B. Analysis

We must first determine whether defendant has met his burden of showing that his motion to withdraw his plea is supported by some fair and just reason. In *State v. Handy*, our Supreme Court set forth "[s]ome of the factors which favor withdrawal":

> whether the defendant has asserted legal innocence, the strength of the State's proffer of evidence, the length of time between entry of the guilty plea and the desire to change it, and whether the accused has had competent counsel at all relevant times. Misunderstanding of the consequences of a guilty plea, hasty entry, confusion, and coercion are also factors for consideration.

*Handy*, 326 N.C. at 539, 391 S.E.2d at 163 (internal citations omitted). No one of these factors is determinative. *Id. Handy* makes it clear that this list is non-exclusive. *Id.* On appeal, defendant argues that four factors favor withdrawal in this case: (1) he pled no contest and had maintained his legal innocence; (2) the State's proffer of evidence was not strong; (3) defendant's first attorney explained that "he was looking at 14 years in jail if he didn't take this plea"; and (4) that defendant filed his motion to withdraw only twelve[4] days after it was entered. Defendant also argues that the State failed to show how it would be prejudiced by the withdrawal of the plea. We confine our analysis to those factors set out in defendant's brief.

### 1. Legal Innocence

Defendant first contends that he asserted his legal innocence based upon his plea of "no contest" to the charge of conspiracy to commit robbery with a dangerous weapon and his subsequent testimony at a co-defendant's trial that he did not agree to participate in a robbery.

At the outset, we note there is some confusion in the record as to what type of plea defendant entered. The transcript of plea states that defendant was entering an *Alford* plea, and that defendant considered it to be in his best interest to plead guilty to the charge and that he understood that his "*Alford* plea" would be treated as the equivalent of being guilty. However, the supplemental page attached to the tran-

---

4. At the hearing on defendant's motion to withdraw, defense counsel asserted that twelve days had passed between the time of defendant's plea and when he wrote the trial court requesting that the plea be withdrawn. However, defendant's plea was accepted on 8 September 2008 and defendant's letter to Judge Jenkins was dated 17 September 2008, which would be nine days.

script of plea states that "defendant will plead no contest to conspiracy robbery [sic] [with] dangerous weapon." At the hearing before Judge Jenkins, defense counsel stated "[h]e's authorized me to tender a plea of guilty, pursuant to an arrangement with the [S]tate." The trial court asked defendant if he understood that he was pleading guilty to the charge of conspiracy to commit robbery with a dangerous weapon. Defendant responded "Yes, sir." Defendant then stated that he was personally pleading guilty. The trial court then inquired into whether this was a no contest plea. Defense counsel then confirmed that it was a no contest plea.

Thus, the record is muddled as to whether defendant entered a no contest plea or a guilty plea pursuant to *Alford*. However, we hold that for purposes of our analysis in the instant case that there is no material difference between a no contest plea and an *Alford* plea. *See State v. Alston*, 139 N.C. App. 787, 792, 534 S.E.2d 666, 669 (2000) ("[A]n '*Alford* plea' constitutes a guilty plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea." (quotation and citation omitted)); *see also Alford*, 400 U.S. at 37, 27 L. Ed. 2d at 171 (stating that there is no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence . . . ."). A defendant enters into an *Alford* plea when he proclaims he is innocent, but "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* Implicit in a plea of no contest is the recognition that although the defendant is unwilling to expressly admit guilt, he is faced with "grim alternatives" and is willing to waive his trial and accept the sentence. *Id.* at 36, 27 L. Ed. 2d at 171.

As one of the bases for his motion to withdraw his plea, defendant relies heavily upon the fact that he entered a no contest/*Alford* plea rather than pleading guilty to the conspiracy charge. In his brief, defendant makes a bald assertion that his plea, in and of itself, equated to a conclusive assertion of innocence. Defendant has cited no authority or provided any sort of analysis to support his position. Further, our research has revealed no North Carolina case that has specifically addressed how this distinction impacts our analysis of an attempted withdrawal of a plea under *Handy*. *See State v. Salvetti*, —— N.C. App. ——, ——, 687 S.E.2d 698, —— (2010) (noting that the defendant entered an *Alford* guilty plea, which does not require an admission of guilt, but with no analysis as to how this impacts the assertion of innocence factor under *Handy*). Because

defendant has cited no authority for his position and this Court has found none, this argument is rejected. *State v. Taylor*, 337 N.C. 597, 614, 447 S.E.2d 360, 371 (1994); N.C.R. App. P. 28(b)(6). We hold the fact that the plea that defendant seeks to withdraw was a no contest or an *Alford* plea does not conclusively establish the factor of assertion of legal innocence for purposes of the *Handy* analysis.

Defendant was not precluded from offering other evidence that he has made an assertion of legal innocence. In the instant case, defendant has failed to do so. Defendant points to his testimony at Weixler's trial that he "did not agree to take part in any robbery." However, any subsequent testimony is negated by the fact that defendant stipulated to the factual basis of the plea and argued for a mitigated range sentence on the basis that he had accepted responsibility for his criminal conduct. N.C. Gen. Stat. § 15A-1340.16(e)(15). Defendant has failed to show that this factor weighs in favor of withdrawal.

## 2. Strength of the State's Proffer of Evidence

Defendant also contends that the State's proffer of evidence was not strong based upon the fact that Weixler was acquitted on all charges and that the jury in Weixler's trial found that no robbery had actually occurred. We disagree.

We must view the State's proffer based upon what was presented to the court at the plea hearing on 8 September 2008, and not based upon what occurred at the subsequent trial of co-defendant Weixler. We again note that defendant did not contest the State's proffer of a factual basis for the plea at the hearing. At sentencing, defendant argued for a mitigated range sentence based upon the fact that he had accepted responsibility for his criminal conduct.

The State's uncontested proffer of the factual basis for defendant's plea was as follows:

> At some point, a decision was made to follow Mr. Boone's car. Mr. Chery followed the car, as well as a car containing Mr. Zghari and Mr. Weixler. At some point, a decision was made to rob the victims in the car that they were following. There was a phone conversation going back and forth between the cars, between Consalvy Jean, who was riding in Mr. Chery's car and Mr. Weixler. The plan was made for Mr. Chery to block off—come around and block off the victim, and they were going to hem him in, and Mr.

Chery did that. The victim, however, got away before they could complete their plan to rob the victim.

Unfortunately, the other car came alongside and shot Mr. Boone. There was a shot fired by Bryan Weixler, as the state contends, and he was injured, as a result of that.

We hold that the State's uncontested proffer of the factual basis was strong, and that the outcome of Weixler's trial is irrelevant to our consideration of this factor.

### 3. Voluntariness of Plea and Competent Counsel

Defendant contends that he had "inadequate consultation" with his original counsel and only entered the plea agreement based upon counsel's assertion that "he would go to jail for fourteen years (14) if he did not take a plea." Defendant's argument implicates both the voluntariness of his plea and the competency of his counsel.

### a. N.C. Gen. Stat. § 15A-1022

"A plea of guilty or no contest involves the waiver of various fundamental rights such as the privilege against self-incrimination, the right of confrontation and the right to trial by jury. Our legislature has sought to insure that such pleas are entered into voluntarily and as a product of informed choice." *State v. Sinclair*, 301 N.C. 193, 197, 270 S.E.2d 418, 421 (1980) (citation omitted). N.C. Gen. Stat. § 15A-1022(a) and (b) (2007) set forth the requirements the trial court must comply with before accepting a plea of guilty or no contest.

The transcript of defendant's plea hearing shows the trial court complied with all of these requirements. Defendant stated that he and his current counsel had discussed the nature of the charges against him and any possible defenses. Defendant understood that by entering a plea he was waiving valuable constitutional rights and that he understood the maximum sentence for the crime charged. Defendant further stated that no one had promised him anything or threatened him to cause him to enter the plea, and that he fully understood what he was doing. Defendant voluntarily and knowingly entered into the plea agreement.

### b. Competency of Counsel

Defendant concedes in his brief that a sentence of fourteen years was "within the realm of possibility[.]" In addition, the trial court found at the hearing on defendant's motion to withdraw his plea that

the potential sentence for defendant, if found guilty of all the charges brought against him and if the sentences were imposed consecutively, would have equaled more than fourteen years.

This contention is based upon alleged misrepresentations by his original retained counsel and not upon any misrepresentation by his appointed counsel that represented defendant at the time of the plea and subsequent motion to withdraw the plea. The record is unclear as to when defendant discharged his first counsel. The record does reveal that defendant was arrested on 23 June 2007, that the State made the plea offer on 17 March 2008, that defendant and his subsequent counsel signed the plea transcript on 27 May 2008, and that the plea was accepted by the court on 8 September 2008. It strains the credulity of this Court that an alleged misrepresentation made at a minimum of five months before the plea hearing, and probably much earlier than that, had any bearing on defendant's decision to enter a guilty plea in this matter. Defendant has failed to demonstrate that his plea was not entered voluntarily or that he lacked competent counsel at any stage of these proceedings.

### 4. Length of Time Between Entry of the Plea and Desire to Change It

Defendant contends that the length of time in between the entry of his plea and his motion to withdraw "was not long" and "was not a strong factor against his withdrawing the plea."

Our appellate courts have "placed heavy reliance on the length of time between a defendant's entry of the guilty plea and motion to withdraw the plea." *Robinson*, 177 N.C. App. at 229, 628 S.E.2d at 255 (citations omitted). The reasoning behind this reliance was articulated in *Handy*:

> A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

326 N.C. at 539, 391 S.E.2d at 163 (quotation omitted). In *Handy*, the defendant informed his attorney that he desired to withdraw his guilty plea less than twenty-four hours after its entry. *Id.* at 540, 391 S.E.2d at 163. Our Supreme Court held that the defendant "clearly

made a prompt and timely motion to withdraw his plea of guilty." *Id.*; *contra State v. Davis*, 150 N.C. App. 205, 206–08, 562 S.E.2d 590, 592–93 (2002) (affirming the denial of the defendant's motion to withdraw his plea made seven days after its entry).

In the instant case, the record shows that on 27 May 2008, defendant, defense counsel, and the prosecutor signed a "Transcript of Plea" in which he indicated that he would enter an *Alford* plea. On 8 September 2008, the trial court accepted defendant's plea. Although defendant's letter seeking to withdraw his plea was sent to Judge Jenkins only nine days after its entry, the facts of this case do not show that this desire was based upon "[a] swift change of heart" as contemplated by *Handy*. Defendant executed the plea transcript approximately three and a half months prior to the plea hearing. There is no indication in the record that during this time defendant wavered on this decision. It was only after Weixler was found not guilty of all charges did defendant decide that he wished to withdraw his plea. Defendant has not shown that this factor weighs in favor of withdrawal. Defendant has failed to show that any of the factors he asserted support his contention that a fair and just reason existed to support the withdrawal of his plea.

### 5. Prejudice to the State

Our appellate courts have clearly established that the burden does not shift to the State to show prejudice until the defendant has established a fair and just reason existed to withdraw his plea. *See Meyer*, 330 N.C. at 743, 412 S.E.2d at 342 ("After a defendant has come forward with a 'fair and just reason' in support of his motion to withdraw, the State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." (quotation omitted)); *State v. Villatoro*, 193 N.C. App. 65, 75, 666 S.E.2d 838, 845 (2008) ("As defendant has failed to show a 'fair and just reason' for withdrawal of his guilty plea, we need not address whether the State would be prejudiced by defendant's withdrawal." (citation omitted); *State v. Hatley*, 185 N.C. App. 93, 101, 648 S.E.2d 222, 227 (2007) ("[W]e only reach the question of substantial prejudice to the State if defendant has carried his burden of proof that a 'fair and just' reason supports his motion to withdraw." (citation omitted)). Because defendant has failed to meet his burden of showing a fair and just reason existed to withdraw his plea, we do not address prejudice against the State.

### III. Conclusion

Defendant has failed to show that any of the factors that he asserted under *Handy* support his contention that a fair and just reason existed to support the withdrawal of his plea. Our independent review of the record in this case reveals that the reason for defendant's motion to withdraw his plea was that his co-defendant, Weixler, was found not guilty of all charges. This is not a proper factor for consideration under *Handy*. The trial court properly denied defendant's motion to withdraw his plea.

AFFIRMED.

Judges ELMORE and HUNTER, JR., Robert N. concur.